Welcome back and we are now up to the case of Hester v. Matthew Gentry. We will start with Attorney Kidd. Thank you, Your Honor. May it please the Court, my name is Jamie Kidd and I represent Coleman County Sheriff Matt Gentry in this argument. The preliminary injunction entered against Sheriff Gentry is due to be reversed and all claims against him are due to be dismissed because, as a matter of law, Sheriff Gentry has no control over either the terms and conditions of pretrial release imposed by Coleman County's judiciary or, what's really more of the point for this particular case, the judge's decisional processes. The District Court and Mr. Hester have focused on the fact that Sheriff Gentry has the literal keys to the jail and that might be sufficient if this were a case where the alleged violation were detention per se. If we were in a more typical ex parte young world where we had an unconstitutional statute that nobody could lawfully be held under. But the core constitutional violation in this case is not really detention, it's the alleged lack of due process. So even going back to ex parte young itself and certainly its progeny, those cases have repeatedly emphasized that a court is supposed to really look at the connection between each defendant and the specific violation alleged. You see that in ex parte young's discussion of its predecessor case, Fitzpatrick v. McGee, and then in more recent cases. For example, this court's decision in Summit Medical Associates v. Pryor where this court had held that an AT&T district attorney were subject to suit under young for the claims relating to criminal prosecutions but not subject to suit under claims for civil enforcement of the statute. Looking at the actual claims in this case, Mr. Hester has alleged all sorts of problems with the process that was given and frankly even with the process that is still being given even under the preliminary injunction. Things like a lack of counsel, that the judges aren't imposing the correct standard of review, even in this sort of harkens back to this court's first argument today, the adequacy of the findings and what's reflected in the judge's findings. Now, Mr. Hester has tried to establish a connection between the due process violation, these alleged due process violations, and Sheriff Gentry by faulting him for detaining pre-trial defendants without checking that what they would allege is adequate due process had been given. But that's not his job. Counsel, I'm sorry to interrupt. This is Robin Rosenbaum. Here's the problem, right? It seems like he would be the right party to sue. Who else would be the party to sue here in order to prevent people from being held when they shouldn't be held? Assuming the premise of the case. Well, at the risk of pointing fingers across our telephonic aisle here, the judicial defendants, Your Honor, it is their job under Alabama law to ensure that these due processes have been met, and it's the standing order that has been promulgated by the chief judge and circuit judge that is the main, allegedly has caused their violations. But the ultimate problem here is that the plaintiffs are the ones who are being held in detention, right? And they're being held in detention even though it might be pursuant to a standing order issued by the judges. The party that actually executes that order is the sheriff. So why wouldn't the sheriff be a proper party here under our jurisprudence? Yes, Your Honor. I think the answer to that is because when you really start getting down into the weeds of this case, when you get beyond just the surface level, and the surface level injunction that the plaintiffs asked for, for example, is a simple negative injunction that would seemingly fall in line with this court's precedent. When you really get down into the facts of this case, it becomes obvious that that's not enough. Even at the preliminary injunction stage, you know, the court couldn't just say, Sheriff, you know, stop detaining these people without adequate due process. It had to give Sheriff Gentry specific, you know, you need to do this and create these forms and do this and do that and all of these other things that were really directed at, as Mr. Schnauz will discuss later, really directed at the judicial defendants. And so that's the difference here, is that you can't give a remedy. And that brings us to the second Ex Parte Young problem. You can't give a remedy to the alleged violations in this case.  Yes, Your Honor. All right. We will hear from Chenoweth. Good morning, and may it please the court. I'm Brad Chenoweth on behalf of the judicial defendants. And with me on the line is Dorman Walker, who represents retired Judge Kim Chaney. I will be speaking on behalf of all the judicial defendants. Without acknowledging that he had done so, the district court shattered pillars at the very foundation of our legal system. First, by defying the will of Congress and violating the judicial defendants' statutory judicial immunity from injunctive relief under Section 1983. And second, by- Counsel, I'm sorry to interrupt. This is Robin Rosenbaum. Here's the problem I have with that. There are two problems, actually. The first one is, I don't see any denial of judicial immunity. And the second one is that the injunction here does not seem to me to order the judiciary to do anything. It's only directed at the sheriff. So, if you want to address, first of all, is there some- Maybe I missed it. Is there some specific denial of judicial immunity that's been issued? And second, if not, why does the injunction, which seems directed only to sheriff Gentry's actions, why does that somehow interfere with or deny your client's immunity? Your Honor, the judicial defendants' immunity was repeatedly asserted before the district court at the preliminary injunction hearing, in the briefing, and at the closing argument. And the injunction against Sheriff Gentry enjoins the judges because it constitutes an impermissible end run around the judge's immunity. It enjoins the sheriff solely insofar as he is immediately putting into effect the judge's determinations on pretrial release. It enjoins the standing order of the presiding circuit judge by converting the bond amounts in the schedule from secured to unsecured and requiring initial appearances within 48 hours rather than 72. And I would direct the court to this court's decision in Stevens v. Osuna in 2017. And that was a case in which the immigration judge was entitled to immunity from injunctive relief claims, where the challenge was the judge closed his court to the plaintiff. And what he did was he ordered the court security officers to remove the plaintiff from the courtroom. Now, would the outcome have been different if the plaintiff had simply sued the court security officers, seeking an injunction preventing them from carrying out the judge's immediate order solely on the basis of the alleged unconstitutionality of the order? I don't think the outcome would have been different. And as this court pointed out in Osuna, the purposes behind judicial immunity are served by extending that judicial immunity to claims for injunctive relief and that it would have a chilling effect on the judiciary and result in the kind of disruptions that we've seen here with our judges having to scramble to comply over the weekend with the federal court's injunction that was entered on a Thursday. Counsel, let me ask you this. If your client, you know, did not follow, did not comply with the injunction, it's kind of strange because it's not really directed at them. Again, it's directed at the gentry. But if your client did things that required gentry then to follow the injunction, right, then could anybody bring a motion to compel that would succeed against your client? I mean, I don't see how that works. In other words, I don't see how it's enjoining your client and I don't see how your client's failure to sort of acquiesce in the procedures that gentry must follow would expose your client to liability in any way. But I might be missing something. So if you would address that, that would be great. Thanks. Your Honor, I have two responses to that. First, our position as set out in the brief in that the injunction against Sheriff Gentry is directly an injunction against the judges by enjoining their power, their judicial power to issue enforceable orders. Second, if the presiding circuit judge were to order Sheriff Gentry to disregard the federal court injunction, this could subject them to contempt for interfering with Sheriff Gentry's obligation and parties who act in concert. That's true. I'm sorry, counsel. Well, that's true. But that's the case any time. If your client directed anybody not to comply with a federal injunction, it would, I mean, that would subject them to liability as well. It doesn't matter what it's for. It's the same as anybody who would interfere with, whether it's your clients or anybody else on the street, would interfere with the execution of a federal injunction directed towards someone else. I mean, that seems to me to be a different kind of issue and not an issue of enjoining your client. I see that my time is up, Your Honor, but I would say that the injunction, the difference between some unrelated third party is that here it is enjoining the person who directly affects the judicial orders, which is an injunction of a judicial official acting in a judicial capacity under the plain meaning of Section 1983. All right. Thank you, counsel. All right. Ms. Kidd and Mr. Shanellis, you have both reserved two and a half minutes for rebuttal. We'll hear now from Attorney West. May it please the Court. The District Court made two principal legal conclusions in this case. The first, which is the heart of this case, is that it violates the Constitution to detain someone indefinitely following a bail hearing if alternatives would reasonably ensure court attendance and public safety. Secondarily, the District Court found that it violates the Constitution to detain indigent people. Counsel, this is Judge Anderson speaking. We actually are pretty familiar with the facts and the issues that are raised. I have a threshold kind of a question. It seems to me that this evidentiary hearing was held within three weeks of the issuance of the standing order, and the district judge seems to rely considerably on the actual practices. It seems to me that we cannot really rely on any of the evidentiary bases in this case. There was only three weeks. It's impossible to tell what the witnesses were talking about when they talked about present practices under the standing order, prior practices. In any event, there's not really enough evidence to support any findings with respect to the actual practices. Do we not have to address this issue as a facial challenge and not as a challenge based on the actual practices? This is exactly what we did in the former Fifth Circuit in the Rainwater case. I don't think so, Your Honor. I think what you're highlighting raises a concern about what happened here, which is that they changed their practices three weeks before the preliminary injunction hearing and years after the original plaintiff actually filed their lawsuit, and I think perhaps about eight months after we intervened in this case. So I agree with you. I also think that the practices or that facially the standing order itself and the district court found this raised serious constitutional problems. This case has very critical different factual differences between Walker. In Walker, the city of Calhoun released all indigent defendants within two days, and no one was preventively detained. But indigent defendants are not guaranteed release in Cullman County. They all may be set above what a person can afford to pay, and that person may be detained indefinitely even if a less restrictive alternative to pretrial detention, like unsecured bond or a court date reminder, stay-away order, or drug or alcohol treatment in a less serious case, or supervision, home detention, surrender of a firearm, or electronic monitoring in a more serious case, would reasonably ensure court attendance or public safety. The fact in this case... This is Judge Anderson again. Walker does clearly establish, does it not, however, that a rational basis and not any kind of heightened scrutiny applies. I don't think it does, Your Honor. Walker focused on procedure because the city's policy guaranteed release to every indigent person within 48 hours from jail. So what it was focusing on actually was procedural due process, and the court said that that made particular sense because the only question in that case was what process the government must follow to facilitate a poor person's release from jail. The panel didn't have to decide what the state must do to justify prolonged pretrial detention and actually left open whether heightened scrutiny would apply under those factual circumstances. As I understand it, under this standing order, the only difference between this case and Walker is that Walker had 48 hours, and in this case it's 72 hours on a facial basis. Is there any other difference? And Walker holds the reason a rational basis applies is because it was not an absolute deprivation, and it seems to me 48 hours, 72 hours is not any difference with respect to absolute deprivation. You ask a series of very important questions, Your Honor, and let me take those in pieces. So first, I do think that there are other very, very important factual distinctions here, and the first is that in the city of Calhoun, everyone was released with indigent within 48 hours. No one was preventively detained, but under Coleman County's system, a person may be detained following a bail hearing indefinitely. So that's a very, very different system. Release was guaranteed. Is it indefinitely, or is it until they show that they're not a flight risk or a danger to the community? It's not an absolute deprivation because if they show that they're not a flight risk or a danger to the community, they can be released, correct? No, no, Your Honor. I think what the court said in Walker—well, the court wasn't clear what an absolute deprivation was in Walker, but I think factually it's really important that everyone— No, I'm talking about in this case. I'm talking about in this case, not in Walker. Well, in this case, no one is guaranteed release. What they are entitled to is a bail hearing within 72 hours. And the standing order says that unless the government shows that the secured bail is the only thing that will assure attendance at trial, unless that is shown, then they are released on unsecured bail or on recognition. Are they not? They're not, Your Honor, and let me explain why. There is a portion of the standing order that says that you are entitled to release on an affordable bail if there is— or an unaffordable bail can only be imposed if there's no less restrictive alternative. But other portions of the standing order say that a court may impose the least restrictive condition of release, but doesn't have to impose that, and that's consistent with the order on initial appearance and bond order that the judges actually fill out. They're simply having to check a box saying that they have to consider the least restrictive condition, but that does not actually impose them. On a facial challenge, we would not assume that anything other than what I said would happen. Is that not true? And if you have a case where it didn't happen properly, then you can bring an as-applied case. Well, here, Your Honor—let me answer the question this way, Your Honor. Here, Your Honor, the defendants are saying that they are implementing Rule 7.2 of the Alabama Rule of Criminal Procedure, and that rule simply requires a judge to consider the least restrictive condition of release, not actually impose it. And I am unaware of any Alabama law interpreting may impose the least restrictive condition as requiring a court to actually impose the least restrictive condition of release. And I'm not aware of any Alabama case law interpreting Rule 7.2 as requiring judges to impose as opposed to merely consider the least restrictive condition of release. I want to go back to Walker, which does say that the City of Calhoun's practices did not create an absolute deprivation, and that's because indigent defendants were guaranteed release within McLaughlin's 48-hour safe harbor. But let me ask you a question. Is it your position here that indigent criminal defendants are absolutely deprived of pretrial release? I mean, if they show that they are not a danger or they're not a flight risk, they're entitled to be released when they have their hearing. Is that not accurate? I think that the concern that I have here is that it shouldn't be the burden on the defendant to make the argument that they should be entitled to release. That burden should be on the government because the liberty interest here is at stake, or because of the liberty interest at stake here. But under the Bearden-Leiter cases, the issue is that indigent plaintiffs must be absolutely deprived of the benefit, as the Supreme Court stated in Rodriguez. So I don't understand what the benefit is you're alleging that they're being absolutely deprived of. They're being deprived of their release. In Bearden, the Supreme Court required more than a hearing before a person's probation. But they're not. How are they being absolutely deprived when they have the ability at a hearing to show that they cannot pay, and if they show then that they are not a flight risk or a danger, then they can be released. It seems to me that what you're saying is that the moment that they show that they're indigent, they should be able to be released without anything further. That's not what I'm saying, Your Honor. In Walker, Walker gave a 48-hour space harbor for bailing. Well, let's talk about that because you talk about the 48-hour in Walker, but Walker, what they relied on for that time period was the actual language in the standing bail order. Where in the opinion does the Walker court say that a longer period would be unconstitutional? That language of 48 hours was specifically in the standing bail order in Walker. Is there language in Walker that says anything past 48 hours is unconstitutional? It doesn't. The court left open whether a longer period, whether there might be greater leeway than McLaughlin. And we're not trying to establish a bright-line rule for every jurisdiction, but the facts in this case don't justify detaining every indigent person. Well, we don't write just for this particular county. We obviously, when we write and we issue an opinion, it has an impact on three different states. So in our federal courts, bail hearings can be postponed and even held beyond 72 hours upon the motion of the government. So if we affirm the district court effectively requiring all bail determinations in federal court, could it also be held to be within 48 hours? No, Your Honor. I think that it's actually a fact-specific test. Walker doesn't tell us whether that dispute of evaluating whether 72 hours would be constitutional or not, whether that would be under procedural due process framework or require an application of Bearden. But if it's a procedural due process framework, it's a very fact-specific test, right? And the district court here made extensive factual findings relevant to the first two math use factors about the devastating consequences resulting from erroneous pretrial detention and the harms that it causes the state. No one in this case disputed that pretrial detention is very harmful. It can lead defendants to lose their jobs, housing, custody of their children, or access to vital mental health and medical care. And unroboted record demonstrated that three days of pretrial detention in Coleman County undermined the state's own interest because it increased the likelihood that a person will fail to appear and engage in new criminal activity. And the district court also correctly found that holding a bail hearing within 48 hours would be minimally burdensome in Coleman County. Two minutes remaining. Judge Turner himself testified that he routinely held bail hearings faster than 72 hours. And unlike many jurisdictions, neither prosecutors nor defense counsel are present at the initial appearance, even when a person is charged with a serious crime. But to the extent that the panel had concerns about administrability, the district court is in a much better position to do fact-finding on remand, given that the injunction has been in place now for almost two and a half years. You know, defendants argue that the panel should apply rational basis review because three days of pre-hearing detention is not an absolute deprivation. But it is both legally and factually based on the record in this case. Legally, Walker held that the City of Calhoun's practices didn't create an absolute deprivation because indigent defendants were guaranteed release within the safe harbor. But again, no one who is unable to pay secured money bail is guaranteed release in Coleman County. The district court found that this case correctly is much more like O'Donnell than Walker. In O'Donnell, the Fifth Circuit held that due process entitles detainees to a bail hearing within 48 hours. And it did so based on a record where the median detained misdemeanor defendant did not spend years or months or even weeks in jail. The district court found that the average length of time between arrest and disposition was 3.2 days, about the same amount of time that a bail hearing must be held in Coleman County. But the Fifth Circuit found that that system created an absolute deprivation. So whichever test applies, the district court correctly drew the line at 48 hours, the same line that the court drew in O'Donnell and Walker, based on the extensive factual record in this case, about the harms associated with three days of pretrial detention. Counsel, your time has expired. Thank you, Your Honor. Thank you, Counsel. All right, and we shall hear again from Ms. Kidd. Thank you, Your Honor. The nature of the substantive discussion, I think, in this case, in the briefing, and in Mr. West's argument just now, really shows that the real target of this 1983 claim, and I do think it's important to note that this is a 1983 claim. It's not, you know, there is no cause of action just under Ex parte Young. It's the judiciary and it's their processes. And so what that leads to, from Sheriff Gentry's point of view, is that the claims against him are not against him for something he's done. They're against the judiciary. And the relief that's being sought to reorganize the state's, those lines and relationships, is against the state itself. And that's not allowed under Ex parte Young, even if you put aside the some connection issue. There are, you know, our standing arguments flow from, that's a slightly different test, but it flows from that same basic point, right? Traceability and redressability. And this Court has recently said, in Lewis v. Governor more recently, that the redressability prong focuses on the effect of the Court's judgment on the defendant himself. You can't get the relief that Mr. Hester is seeking from, just from Sheriff Gentry, or really from Sheriff Gentry at all, if you're following these other Alabama statutes that are not alleged to be unconstitutionally independent. What this is looking at, it's an unprecedented expansion of Ex parte Young that's going to open the door to challenges against all sorts of judicial actions that result in inruns against, around judicial immunity, behavior procedures, even the appeal processes. The same basic problem, you know, we also allege, of course, just to plain old 12B6, 1983, motion to dismiss. And you have the same basic problem there, that there's no causal connection. And that is, again, Ex parte Young says some connection, 1983 requires a causal connection. That's totally missing here. And so for these reasons, we would respectfully request that this Court reverse the injunction against Sheriff Gentry and dismiss all claims against him. Thank you. Thank you, Counsel. Mr. Shinaweth? This is Brad Shinaweth for the Judicial Defendants. I would like to make two points in rebuttal. First, yes, indeed, Mr. Hester's standing is limited to only a facial challenge to the standing order. The standing order was not applied to Mr. Hester. His suit is proceeding under the capable of repetition, yet evading review exception to mootness set out in Gersing v. Pew and County of Riverside v. McLaughlin for people who file suit challenging a brief period of pretrial detention. Mr. Hester's standing and that of the unnamed class members will always and only be limited to a facial challenge to the standing order. And second, as to Mr. West's point that heightened scrutiny applies notwithstanding Walker because in Walker you are guaranteed a right to release if you're indigent. We disagree with that argument, Your Honor, because the procedure that is given for those who cannot immediately afford the preset amount in the bond schedule is the exact same procedure that was given in Rainwater. Rainwater continues to be the case that is on all fours with our bail procedures here, and Walker said that Rainwater also was not a case of heightened scrutiny. So Rainwater says the person who cannot make the preset amount in the bond solely due to inability to pay is entitled to meaningful consideration of alternative forms of release, of less restrictive forms of release, and that is the sole basis for the detention is to allow a judge to determine whether less restrictive conditions of release can be imposed. And so if Rainwater did not involve heightened scrutiny, then heightened scrutiny should not apply here either. So in conclusion, an individual who receives bail he cannot afford from a judge at the point at which that person receives meaningful individual consideration must proceed under the Eighth Amendment claim at that point. And in conclusion, the district judge misapplied the law and is accordingly entitled to no deference from this court on review from a preliminary injunction, and we respectfully request that this court reverse. Thank you, counsel. We'll take the cases under advisement, and we will be in recess for the hearing.